Ben M. Harrington (SBN 313877)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
benh@hbsslaw.com

Shayne C. Stevenson (*pro hac vice* forthcoming)
Breanna Van Engelen (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
shaynes@hbsslaw.com
breannav@hbsslaw.com

[Additional counsel listed below]

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| DIANA THEODORE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS NATIONAL BANK,<br><br>　　　　　　　　　　Defendant. | No. 3:23-cv-3710<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

For her complaint against the defendant, Plaintiff, on her own behalf and on behalf of all others similarly situated, alleges as follows.

**I.     INTRODUCTION**

1. It is a well-established rule that credit card issuers may profit from high credit card interest rates only if they are transparent with cardholders about how those rates operate *and* the rates are calculated and imposed to conform with, among other things, the Truth in Lending Act (TILA), the bedrock federal consumer protection law that regulates the credit card industry.

2. Plaintiff brings this action because American Express violated that rule by wrongfully imposing excessive interest charges on their cardholders in contravention of the Truth in Lending Act.

3. The defendant here is among the largest and most successful credit card issuers in America. Just in the past few years, it has earned billions of dollars in revenue from its credit card business.

4. From the nearly $200 billion in income earned by credit card issuers each year, income derived from interest charged to cardholders is among the most lucrative income streams to card issuers like American Express.

5. The massive income generated by high, double-digit interest rates imposed on cardholders—combined with the power of compound interest—creates an incentive for card issuers, including the defendant, to increase interest rates whenever possible. Profits are especially easy to generate if credit card issuers can increase their cardholders' interest rates faster than the borrowing rates in the marketplace.

6. To rein in abusive interest rate practices of credit card issuers, Congress strengthened the Truth in Lending Act by enacting the Credit Card Accountability, Responsibility, and Disclosure Act of 2009 (the "CARD Act").

7. The CARD Act amendments to TILA prohibit credit card companies from raising interest rates without advanced notice, and even then, only allow interest rate increases to apply to future transactions.

8. These TILA amendments provide a few narrow exceptions to this general prohibition, including a "variable rate" exception, which, in limited, defined circumstances, allows a credit card issuer to raise interest rates by operation of a third-party index, such as the Prime Rate.

9. American Express offers credit cards with variable rates affected by increases in the Prime Rate. Since March 2022, the defendant has increased the interest rates on its credit card offerings at least ten times.

10. Despite the crushing impact of these variable rate hikes on millions of cardholders across the United States—and the massive revenue these hikes have generated for the defendant credit card issuers—the defendant designed and adopted a proprietary calculation method to unlawfully increase credit card interest rates over this period.

11. Specifically, since March 2022, the defendant has repriced and recalculated daily interest charges imposed on plaintiff and the Classes of cardholders *before* the Prime Rate index has actually increased and imposed these rate increases on cardholders' protected balances.

12. Imposed without the required 45-day notice for proprietary rate changes, the defendant's variable interest rate hikes since March 2022 violate TILA.

13. As a result, millions of the defendant's cardholders have been charged and paid excessive interest on transactions that should never have endured those interest rate increases.

14. Plaintiff brings this action to recover actual damages for herself and the proposed Class and Subclass and also to secure injunctive and declaratory relief ordering American Express to cease and desist in this unlawful practice.

## II.   JURISDICTION & VENUE

15. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Truth in Lending Act, as provided at 15 U.S.C. § 1640(e).

16. This Court has personal jurisdiction over the defendant pursuant to 18 U.S.C. § 1965(b) & (d). The defendant has minimum contacts with the United States, this judicial district, and this state, and intentionally availed itself of the laws of the United States and this state by conducting a substantial amount of business in this state and throughout this district.

COMPLAINT - 2
Case No.: 3:23-cv-3710
011165-11/2311808 V4

17. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b). A substantial part of the events giving rise to these claims likely occurred in this district, where the defendant has substantial operations and where Plaintiff and many members of the putative class and subclass reside.

### III.   PARTIES

18. Diana Theodore is a citizen of the State of California, residing in the City of Novato. During the relevant period, Plaintiff Theodore has been an American Express credit cardholder charged unlawful interest by the defendant.

19. American Express National Bank, a federal savings bank and wholly-owned subsidiary of American Express Company, issues several credit cards under the American Express brand including those used by Plaintiff here.

### IV.   FACTUAL BACKGROUND

20. The Truth in Lending Act was first enacted in 1968 as an early federal effort to require lenders to disclose information fully and accurately about the terms, charges, and fees associated with consumer loans.

21. Relevant here, consumers have benefitted from TILA's longstanding requirement that credit card issuers uniformly disclose in writing to prospective cardholders the actual cost of credit—expressed as the annual percentage rate—the finance charges consumers incur from use of credit cards, the amount being financed, penalty fees, and the total cost of payments.

22. The consumer protections afforded by TILA, however, originally did not extend to substantive protections from certain abusive practices by credit card issuers, including the frequent imposition of increased interest rates on prior credit card charges.

23. Consumer rights were significantly strengthened through the passage of the CARD Act, which added several substantive credit card protections for consumers who obtain credit cards under open-ended consumer credit plans.

24. One of the most important prohibitions implemented through the CARD Act is the prohibition against certain types of unfair and deceptive "repricing" practices, including card issuers'

practice of raising interest rates above the rate cardholders signed up for and imposing those increased rates on all card transactions—past, present, and future.

25. TILA prohibits a card issuer from raising interest rates on credit cards without 45 days advanced notice, with the rate increase permitted to take effect no sooner than 15 days following notice.[1]

26. Even with advanced notice, the CARD Act amendments limit the application of new, increased interest rates, providing that "[i]n the case of any credit card account under an open end consumer credit plan, no creditor may increase any annual percentage rate, fee, or finance charge applicable to any outstanding balance . . . ."[2]

27. The CARD Act thus brought a legal distinction into credit card charging practices, allowing "advanced notice" interest rate increases to apply to *future* card transactions, while defining *existing* (or "outstanding") balances as "protected balances" to which the increased rates could not be applied.

28. The CARD Act generally allows rate increases only with advanced notice and then only on *future* transactions.

29. A card issuer can avoid this so-called protected balance rule only if it can carry the burden of proving it has complied with the requirements of one or more of the limited, defined exceptions.

30. Relevant here, the CARD Act creates a narrow exception for "an increase in a variable annual percentage rate in accordance with a credit card agreement that provides for changes in the rate according to operation of an index that is not under the control of the creditor and is available to the general public."[3]

31. In other words, defendant American Express may increase the interest rates on its credit cards without the statutory notice only if its credit card agreements and practices qualify for

---

[1] 15 U.S.C. § 1637(i)(1); 12 C.F.R. § 1206.55(b)(3).

[2] 15 U.S.C. § 1666i-1(a).

[3] 15 U.S.C. § 1666i-1(b)(2).

this limited exception. This requires that the rate automatically increases, *i.e.* "according to operation of an index."

32. For example, if an issuer qualifies for this exception on a particular credit card, the interest rate on that card could automatically fluctuate with the Prime Rate. In that case, the proprietary fixed rate established in the cardholder agreement (*e.g.*, proprietary fixed rate: 15.00%) would combine with the variable index rate (*e.g.*, Prime Rate or another third-party published index rate: 5.00%) to determine a total variable annual percentage rate (*e.g.*, 15.00% + 5.00% = 20.00%).

33. The defendant includes the Prime Rate in its variable rate formulas. The Prime Rate has more than doubled since March 2022 and is now at 8.25%, the highest in more than a decade. Beginning on March 17, 2022, the Prime Rate increased 0.25% to a rate of 3.50%. Since March 2022, there have been ten uninterrupted increases in the Prime Rate over 14 months. The Prime Rate increased 4.0% in 2022 and another 0.75% so far in 2023, including the latest Prime Rate increase on May 4 which brought the rate up to the current rate, 8.25%.

34. Since March 2022, the defendant has used the increase in the Prime Rate as a pretext for its unlawful imposition of excessive interest rates on its credit cards.

35. These unlawful interest rate increases have generated untold millions for American Express, which has so far imposed ten interest rate increases on its cardholders over the period.

## V. ALLEGATIONS

36. The CARD Act amendments to TILA include a general prohibition on raising interest rates on credit cards without advance notice and protect outstanding credit card balances from such increases. Despite this prohibition, American Express has, since March 2022, unlawfully raised interest rates on its credit cards without advanced notice and then improperly imposed those rates on existing balances.

37. American Express applies variable annual percentage rates for purchases made on its credit cards. Per its cardmember agreement, American Express claims to rely on a daily periodic rate to impose interest every day.

38. Despite provisions in its card agreements attesting to the use of daily periodic rate calculations, and even though TILA prohibits (a) increasing rates without notice and (b) imposing

COMPLAINT - 5
Case No.: 3:23-cv-3710
011165-11/2311808 V4

1   increased rates on outstanding balances, American Express has, since March 2022, increased its
2   credit card rates without notice and applied those rates to cardholders' outstanding balances.
3         39.    Defendant's proprietary operations that increase and retroactively impose daily
4   interest rates are unlawful repricing schemes explicitly prohibited by TILA.
5         40.    For example, rather than raising rates only prospectively and "according to operation
6   of an index," American Express retroactively imposes an increased variable interest rate to the *entire*
7   *billing period* during which its variable rate increases. As its cardholder agreements provide: "When
8   the Prime Rate changes, the resulting changes to variable APRs take effect as of the first day of the
9   billing period."
10         41.    In other words, rather than raise its rates "according to operation of an index,"
11   American Express retroactively imposes its own proprietary operation for interest rate increases upon
12   a cardholder balance for the *entire billing period,* even imposing daily interest charges on days when
13   the *new* rate did not yet exist.
14         42.    Plaintiff Theodore is a consumer credit cardholder of a card issued by defendant
15   American Express National Bank. During the relevant period, American Express—through its
16   proprietary operations—increased the variable interest rate on her credit card ten times without ever
17   providing the required advance notice of the respective rate changes.
18         43.    For several months during the relevant period, American Express imposed an
19   increased interest rate on her protected balances. These rate increases were generally imposed during
20   billing periods before any change in the Prime Rate and resulted in excessive and unlawful interest
21   charges on her account. These interest rate changes and charges violate the CARD Act. The
22   sequence of unlawful variable interest rate increases imposed on Plaintiff Theodore's account over
23   the past fourteen months have resulted in significant economic damage to her.
24         44.    As these allegations make plain, the defendant's credit card interest rate increases
25   since March 2022 have not been implemented in accordance with TILA or with a credit card
26   agreement that provides for increases in the interest rate according to the operation of an index.
27         45.    Defendant American Express designed and adopted proprietary interest rate
28   calculation models that are not permitted under TILA, unlawfully imposed as they have been without

the required notice and upon outstanding balances carried by Plaintiff and the proposed Class and Subclass.

46. Defendant has unlawfully raised interest rates on its credit cards ten times over fourteen months in direct violation of TILA and the requirements of its CARD Act amendments. Further increases to the Prime Rate are expected, meaning the defendant will implement further unlawful rate increases unless this Court grants relief.

## VI. CLASS ALLEGATIONS

47. Plaintiff brings this proposed class action on behalf of herself and, under Rules 23(a), 23(b)(2) & 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and both a nationwide class and a California subclass:

> *All American Express consumer credit card cardmembers who carried a card balance from at least one billing period to another between March 2022 and today on a variable rate credit card* (the "Class").

> *All American Express consumer credit card cardmembers who carried a card balance from at least one billing period to another between March 2022 and today on a variable rate credit card while a resident of the State of California* (the "Subclass").

48. Excluded from this proposed class are the defendant; defendant's affiliates and subsidiaries; defendant's current or former officers and directors; defendant's current employees, agents, or other representatives; the district judge and magistrate judge to whom this case is assigned and those judges' immediate families.

49. Plaintiff reserves the right to revisit the definition of the Class and Subclass upon review of information learned through further investigation or discovery.

50. This action should proceed as a class action because Plaintiff seeks injunctive relief that will apply to the Classes as wholes and further because Plaintiff will prove the elements of her damages claims with common evidence.

51. The allegations here satisfy each of the requirements of Rule 23, in relevant parts.

52. *Numerosity*: The proposed Class and Subclass include many millions of American Express credit cardholders across America who carried debit balances from one billing period to

another during the relevant period. The members of the Class and Subclass are so numerous and geographically dispersed that individual joinder of all Class members is entirely impracticable.

53. *Commonality and Predominance*: Questions of law and fact are common to the claims of the plaintiff and members of the plaintiff Class and Subclass; these common questions predominate over any conceivable questions affecting only individual Class members. These common issues include, but are not limited to:

(a) whether American Express engaged in the conduct alleged in this complaint;

(b) whether American Express has failed to comply with the CARD Act requirements of the Truth in Lending Act by increasing credit card interest rates without advanced notice and on protected balances during the relevant period;

(c) whether American Express uses a proprietary methods for applying interest rate increases outside the protection of the "variable rate" exception to the advanced notice and protected balance requirements of the CARD Act;

(d) whether American Express failed to consistently calculate and impose daily compounded interest;

(e) whether Class members are entitled to injunctive relief, and if so, in what form;

(f) whether Class members are entitled to damages, and if so, in what amount;

(g) whether the defendant's practices violate the California Unfair Competition Law.

54. *Typicality*: Plaintiff's claims are typical of the claims of all members of the Class and Subclass because, among other things, all Class and Subclass members were comparably and similarly injured by the defendants' wrongful conduct. Plaintiff, like members of the Class and Subclass, was charged excessive, retroactive, unlawful interest as the product of uniform practices by American Express with respect to all credit cardholders.

55. *Adequacy*: Plaintiff will represent and protect the interests of the proposed Class and Subclass both adequately and fairly. Plaintiff has retained counsel that is uncommonly qualified in this area, both competent and vastly experienced in complex class action litigation. Plaintiff has no interests that are antagonistic to those of the proposed Class and Subclass and her interests do not conflict with the interests of the proposed Class and Subclass members she seeks to represent.

56.     *Injunctive and Declaratory Relief*: Through the conduct alleged here, the defendant has acted on grounds that apply generally to the Class and Subclass. Accordingly, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class and Subclass as a whole.

57.     *Superiority*: This proposed class action is superior to all other available methods for the fair and efficient adjudication of this matter and no unusual difficulties are likely to be encountered in the management of this class action. Even if members of the proposed Class and Subclass could sustain individual litigation, that would not be preferable to a class action because individual litigation would increase delay and expense to the parties. The class action mechanism will provide single adjudication, economies of scale, and comprehensive supervision by a single Court, ensuring uniformity of decisions.

## VII.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### VIOLATION OF THE TRUTH IN LENDING ACT
### 15 U.S.C. § 1601 *ET SEQ.*

58.     Plaintiff repeats and re-alleges every allegation above as if set forth here in full.

59.     The Credit CARD Act of 2009 added new substantive provisions to TILA. The CARD Act prohibits card issuers from raising interest rates on credit cards without advanced notice and prevents imposing new rates on existing balances, known as "protected balances."[4]

60.     The statute provides, "[i]n the case of any credit card account under an open-end consumer credit plan, no creditor may increase any annual percentage rate, fee, or finance charge applicable to any outstanding balance, except as permitted under subsection (b)."[5] Rather, card issuers are required to separately track those protected balances and keep interest at the previous lower rate.[6]

---

[4] 15 U.S.C. § 1666i-1.

[5] *Id.* at (a).

[6] *Id.* at (c).

61.     The CARD Act contains four exceptions to the protected balances rule, none of which applies here.[7]

62.     Defendant violated the Credit CARD Act by increasing the interest rates on its credit cards ten or more times since March 2022, imposing those increases on protected balances and failing to provide the required 45-day notice.

63.     As a direct and proximate result of the defendant's violation of the CARD Act, Plaintiff and Class members suffered damages.

64.     Plaintiff and the Class are entitled to statutory and actual damages and other relief under TILA.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
## CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*

65.     Plaintiff repeats and re-alleges every allegation above as if set forth here in full.

66.     California's Unfair Competition Law (UCL) prohibits any "unlawful, unfair, or fraudulent business act or practice." The defendant has engaged and continues to engage in unlawful business practices that violate the UCL.

67.     The defendant's business practices violate the UCL's prohibition on "unlawful . . . business act[s] or practice[s]" because they violate the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, as alleged in this complaint.

68.     Plaintiff and the California Subclass have suffered injury-in-fact as a result of the defendant's unlawful business practices.

69.     Defendant's unlawful conduct alleged here has occurred, and continues to occur, in the ordinary and general conduct of the defendant's credit card business practices, perpetuated and repeated throughout the State of California and nationwide.

70.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin the defendant from continuing its unlawful business practices and to restore to Plaintiff and

---

[7] *Id.* at (b).

the members of the proposed California Subclasses all monies that the defendant acquired through unfair and unlawful competition, per Cal. Bus. & Prof. Code § 17203, and provide such relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief on her own behalf and on behalf of all those similarly situated:

    A.    That the Court certify the proposed Class and Subclass and appoint Plaintiff as Class representative and her counsel as Class counsel for both;

    B.    That the Court award Plaintiff and the proposed Class and Subclass all appropriate relief, to include, but not limited to, actual damages, punitive and statutory damages, restitution, and injunctive relief prohibiting the defendant from engaging in the wrongful conduct alleged here;

    C.    That the Court grant such additional orders or judgements as may be necessary to remedy or prevent the unlawful practices complained of here;

    D.    That the Court award Plaintiff and the proposed Class and Subclass reasonable attorneys' fees, costs, and pre-and-post-judgement interest; and

    E.    That the Court award Plaintiff and the proposed Class and Subclass any other favorable relief that may be available and appropriate under federal or state law or at equity.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all issues so triable.

| | | |
|---|---|---|
| 1 | DATED this 26th day of July, 2023. | Respectfully submitted, |
| 2 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 3 | | By */s/ Ben Harrington* |
| 4 | | Ben M. Harrington (SBN 313877) |

DATED this 26th day of July, 2023.    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Ben Harrington*
   Ben M. Harrington (SBN 313877)
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
benh@hbsslaw.com

Shayne C. Stevenson (*pro hac vice* forthcoming)
Breanna Van Engelen (*pro hac vice* forthcoming)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
shaynes@hbsslaw.com
breannav@hbsslaw.com

SMITH & LOWNEY, PLLC

By */s/ Knoll Lowney*
   Knoll D. Lowney (*pro hac vice* forthcoming)
   Claire Tonry (*pro hac vice* forthcoming)
2317 E. John Street
Seattle, Washington 98112
Telephone: (206) 860-2883
Facsimile: (206) 860-4187
knoll@smithandlowney.com
claire@smithandlowney.com

COMPLAINT - 12
Case No.: 3:23-cv-3710
011165-11/2311808 V4