1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   DIANA THEODORE,                          Case No.  23-cv-03710-AMO

8              Plaintiff,

9         v.                                 **ORDER GRANTING MOTION TO
                                             COMPEL ARBITRATION AND
10  AMERICAN EXPRESS NATIONAL                DISMISSING CASE**
    BANK,
11                                           Re: Dkt. No. 18
               Defendant.

12

13         Plaintiff Diana Theodore brings this putative class action, alleging that Defendant

14  American Express National Bank violated the Truth in Lending Act and California's Unfair

15  Competition Law by implementing unlawful interest rate increases.  American Express now

16  moves to compel Theodore to arbitrate her individual claims and dismiss or stay this action

17  pending arbitration.  Theodore opposes the motion.  The sole disputed issue before the Court is

18  whether Theodore agreed to arbitrate her claims.[1]  ECF 41 at 10 n.14.  She did.

19  //

20  //

21  //

22  //

23

24  [1] Claiming that the arbitration provision is not binding on her, Theodore asserts that she thus "need
    not dispute most of [American Express's] substantive arguments, e.g., that an actual mutually
25  binding arbitration agreement would be generally enforceable . . . , that [her] claims . . .  would fall
    under the scope of such a mutual agreement . . . , or that such an agreement if properly drafted
26  could preclude class action litigation."  ECF 41 at 10 n.14.  By leaving those issues unaddressed,
    Theodore has conceded them.  *See Genomics v. Song*, No. 21-CV-04507-JST, 2023 WL 8852735,
27  at *6 (N.D. Cal. Dec. 21, 2023) ("[Defendant] does not address this point and therefore concedes it
    by his silence").
28

United States District Court
Northern District of California

The 2018 agreement governing Theodore's American Express card contains a section titled "Claims Resolution."[2]  ECF 18-1 at 11-12.  That section provides, in part:

> You or we may elect to resolve any claim by individual arbitration. Claims are decided by a neutral arbitrator.
> **If arbitration is chosen by any party, neither you nor we will have the right to litigate that claim in court or have a jury trial on that claim.  Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration.  Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited.  The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court.  Except as set forth below, the arbitrator's decision will be final and binding.  Other rights you or we would have in court may also not be available in arbitration.**

*Id.* (emphasis in original).  Immediately after the Claims Resolution provision is a heading that reads "Claims Resolution for Covered Borrowers." *Id.* at 12.  The text under that heading reads, in part:

> You may elect, but are not required, to resolve any claim by individual arbitration.  We may also request to resolve any claim by individual arbitration, but you are not required to accept our request.  Claims are decided by a neutral arbitrator.
> **If you elect or agree to resolve a claim through arbitration, your or our right to litigate that claim in court or have a jury trial on that claim may be limited.  Further, you and we may not have the right to participate in a representative capacity or as a member of any class pertaining to any claim subject to arbitration.  Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited.  The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court.  Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.**

ECF 18-1 at 12-13 (emphasis in original).

Theodore attempts to evade the first Claims Resolution provision by relying only the Claims Resolution for Covered Borrowers provision, claiming that the latter gives her the option to choose whether to proceed with arbitration and ignoring that the former limits her dispute

---

[2] The agreement contains a Utah choice-of-law provision, and both parties agree that Utah law governs here.  *See* ECF 18-1 at 11; ECF 41 at 11; ECF 42 at 8.

United States District Court
Northern District of California

1   resolution mechanism to arbitration.[3]  ECF 41 at 13.

2        The Court declines to adopt Theodore's self-serving interpretation of these provisions.

3   Instead, this Court must read the agreement to give effect to each and every provision.  *See*

4   *WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1144 (Utah 2002) ("In interpreting a

5   contract, [courts] . . . look to the writing itself to ascertain the parties' intentions, and . . . consider

6   each contract provision . . .  in relation to all of the others, with a view toward giving effect to all

7   and ignoring none.") (internal quotations omitted).  Adopting Theodore's reading of the contract

8   runs afoul of this settled principle of contract interpretation.  It requires the Court to read-out the

9   provision that compels Theodore to arbitrate her claims while giving expanded effect to the

10  provision on which Theodore relies, though it does not apply to her under any reasonable reading

11  of the rest of the agreement.  The Court declines to re-write the contract in the manner Theodore

12  suggests.

13        Instead, the Court, as it must, reads the two Claims Resolution provisions harmoniously

14  with the rest of the contract.  Though Theodore is correct that American Express does not define

15  the term "covered borrower," the section titled "Military Lending Act," which is nested under

16  "Other important information," reads:

17       Federal law provides important protections to members of the
         Armed Forces and their dependents relating to extensions of
18       consumer credit.  In general, the cost of consumer credit to a
         member of the Armed Forces and his or her dependent may not
19       exceed an annual percentage rate of 36 percent.  This rate must
         include, as applicable to the credit transaction or account: the costs
20       associated with credit insurance premiums; fees for ancillary
         products sold in connection with the credit transaction; any
21       application fee charged (other than certain application fees for
         specified credit transactions or accounts); and any participation fee
22       (other than certain participation fees for a credit card account).

23       To listen to this statement, as well as a description of your payment
         obligation for this Account, call us at **855-531-0379**.

24       If you are a covered borrower, the Claims Resolution section of this
         Agreement will not apply to you in connection with this Account.

25

26

27  [3] The Court notes that American Express amended these provisions in 2019 and 2020.  ECF 18-1
    at 26-27, 38, 39, 42, 43.  The amendments are not material to the threshold issue of which Claims
28  Resolution provision applies to Theodore.  Accordingly, the Court does not lay out the details of
    those amendments in this order.

United States District Court
Northern District of California

1    Instead, the *Claims Resolution for Covered Borrowers* section will
apply.

2    ECF 18-1 at 9 (emphasis in original).  This provision dispenses with any argument that

3    Theodore's proffered reading of the contract is reasonable.  It makes clear that the term "covered

4    borrower" refers to members of the Armed Forces and their dependents and expressly notes the

5    distinction between the Claims Resolution provision, which does not apply to them, and the

6    Claims Resolution for Covered Borrowers provision, which does.  The Military Lending Act

7    provision explains how the two Claims Resolution provisions are harmonious.  Reading the 2018

8    agreement guided by that explanation, rather than Theodore's conveniently crafted alternative,

9    controls.

10    Accordingly, the motion to compel arbitration is GRANTED.  The Court DISMISSES this

11    action pending arbitration.  The Clerk shall close the file in this matter.

12    The Court notes that the Supreme Court granted the petition for certiorari in *Forrest v.*

13    *Spizzirri*, 62 F.4th 1201, 1204-05 (9th Cir. 2023), a case in which the Ninth Circuit reiterated that

14    it "long carved out an exception" to the requirement set forth in Section 3 of the Federal

15    Arbitration Act mandating a stay of litigation pending arbitration:  "[N]otwithstanding the

16    language of [section three], a district court may either stay the action or dismiss it outright when,

17    as here, the court determines that all of the claims raised in the action are subject to arbitration."

18    *Id.* (modifications in original).  In the event the Supreme Court does away with the exception,

19    either party may move to modify this order for the limited purpose of seeking a stay in lieu of

20    dismissal.

21    **IT IS SO ORDERED.**

22    Dated: April 4, 2024

23

24

25    **ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

26

27

28

4